IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| MARY CRABTREE, ANDREW CRABTREE, and JUSTIN HUBERD, <br><br> Plaintiffs, <br><br><br><br> vs. <br><br><br> JAMES WOODMAN, LANITA WOODMAN, and JESSE ARCHULETA, <br><br> Defendants. | ORDER and MEMORANDUM DECISION <br><br><br><br><br><br> Case No. 2:06-CV-946 TC |

In this action, Mary Crabtree, Andrew Crabtree and Justin Huberd (the "Plaintiffs") have sued Jesse Archuleta, James Woodman and Lanita Woodman (the "Defendants") for causing an accident in which Ms. Crabtree was seriously injured. Now before the court are Mr. Archuleta's motions to dismiss (Dkt. Nos. 50 & 52). Mr. Archuleta has moved to dismiss all of Ms. Crabtree's claims and Mr. Crabtree's loss of consortium claim. Mr. Archuleta argues that Ms. Crabtree released all of her claims relating to the accident, precluding her suit here. Mr. Archuleta further maintains that, under Utah statute, Ms. Crabtree's agreement also released Mr. Crabtree's loss of consortium claim.

The Plaintiffs respond that Ms. Crabtree's release is voidable due to fraud in the inducement. The Plaintiffs contend that Ms. Crabtree agreed to release her claims based on a misrepresentation by the Woodman's insurance company, American Family Insurance Group ("American Family"). Specifically, Plaintiffs allege that American Family promised Ms.

Crabtree that if she released her claims, all of Mr. Crabtree's claims, including his loss of consortium claim, would be honored.  American Family has refused, however, to pay Mr. Crabtree's loss of consortium claim.  The Plaintiffs argue that this refusal makes American Family's promise to honor Mr. Crabtree's claim a falsehood.  The Plaintiffs further argue that even if Ms. Crabtree's release of her claims is enforceable, that release did not release Mr. Crabtree's loss of consortium claim.

To resolve this dispute, the court initially answers a question that is a matter of first impression in Utah.  That is, does an injured person who releases all claims against a tortfeasor also release a loss of consortium claim by his or her spouse?  While Utah courts have not yet considered this issue, several other states have done so, giving guidance as to what the Utah Supreme Court might rule.  For the reasons below, the court concludes that as a matter of Utah law, an injured person who releases his or her claims does not release his or her spouse's claim for loss of consortium.

Next, the court examines the effect of American Family's alleged promise to honor Mr. Crabtree's loss of consortium claim on Ms. Crabtree's release.  As explained further below, the Plaintiffs have raised disputed issues of fact about whether Ms. Crabtree was fraudulently induced to release her claims against Mr. Archuleta.  Accordingly, both of Mr. Archuleta's motions are DENIED.

## BACKGROUND

On September 18, 2006, the Plaintiffs  brought this action against the Defendants in Utah state court.   The Plaintiffs alleged that Mr. Archuleta negligently caused a car accident in which Ms. Crabtree was badly injured.  Mr. Crabtree and Mr. Huberd (Ms. Crabtree's son) were not in the same car as Ms. Crabtree but were also involved in the accident.  They were not seriously

hurt.  The Woodmans, Mr. Archuleta's grandparents, lent Mr. Archuleta the vehicle he was driving when he allegedly caused the accident. Each of the Plaintiffs alleges claims for negligence and negligent infliction of emotional distress.  Mr. Crabtree also alleges a claim for loss of consortium.

The accident occurred on August 8, 2005.  Not long after, Ms. Crabtree's attorney, Matthew Harris, began to pursue her possible claims against Mr. Archuleta and the Woodmans. Because Mr. Archuleta apparently had no assets aside from the Woodman's American Family insurance policy covering the vehicle involved in the accident, Mr. Harris communicated with Marianne Criswell, an American Family representative.

Mr. Harris states that during his settlement negotiations with Ms. Criswell, he expressed concerns to Ms. Criswell that if Ms. Crabtree released her claims, she might also release Mr. Crabtree's loss of consortium claim.  According to Mr. Harris, "Ms. Criswell assured me that Andy Crabtree's loss of consortium claim would be honored at a later date."  (Harris Aff. ¶ 12, attached as Ex. A to Memo in Opp'n to SJ as to Ms. Crabtree.)

On September 12, 2005, Ms. Crabtree signed an agreement to release Mr. Archuleta and the Woodmans from all liability arising from the accident.  In return, Ms. Crabtree received $100,000, the per-person limit of the American Family policy.  The release agreement included an integration clause, stating that the release "contains the entire agreement between the parties."

Mr. Harris faxed the signed release to American Family on September 12, 2005.  In his fax cover sheet, Mr. Harris stated that "[i]n making this release, we have relied on certain representations from your office."  (Ex. C to Memo in Opp'n to Summ. J. as to Ms. Crabtree.) Mr. Harris continued that "[i]t has been represented that. . .  This release will not release. . . any claims from Andrew Crabtree or Justin Huberd against your insured or American Family."  (Id.)

3

After Ms. Crabtree signed the release, American Family paid her the full settlement amount.  Later, Mr. Harris's office submitted a demand to American Family that it pay on Mr. Crabtree's loss of consortium claim.  American Family refused that claim, reasoning that Ms. Crabtree had released Mr. Crabtree's claim as a matter of Utah law.

In response, the Plaintiffs filed the present suit.  Defendants removed the suit to this court on November 13, 2006, based on diversity jurisdiction.  The Woodmans were dismissed from this action in June, 2007.  On November 26, 2007, after discovery, Mr. Archuleta moved for summary judgment as to all of Ms. Crabtree's claims and partial summary judgment as to Mr. Crabtree's loss of consortium claim.  Mr. Archuleta did not move for summary judgment of any of Mr. Crabtree's other claims, or any of Mr. Huberd's claims.  Trial in this matter is set for January 12, 2009.

There are two questions that the court views as relevant here.  First, assuming Ms. Crabtree's release is enforceable, did she also waive Mr. Crabtree's loss of consortium claim when she released all Defendants from all possible claims?  Second, is there a factual dispute as to whether Ms. Crabtree was fraudulently induced into agreeing to the release?  As explained further below, the court first holds that even assuming Ms. Crabtree's release was valid, she did not release Mr. Crabtree's loss of consortium claim.  Second, the court finds that, in any event, there are disputed material facts on the issue of whether Ms. Crabtree's release is enforceable.

## ANALYSIS

Federal Rule of Civil Procedure 56 allows a court to grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  Fed. R. Civ. P. 56(c);  see Anderson v. Liberty

4

Lobby, Inc., 477 U.S. 242, 250-51 (1986); Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670

(10th Cir. 1998).  Courts must "examine the factual record and reasonable inferences therefrom

in the light most favorable to the party opposing summary judgment."  Applied Genetics Int'l,

Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990).

## I.    **Mr. Crabtree's Loss of Consortium Claim**

Turning to Mr. Crabtree's loss of consortium claim, Mr. Archuleta argues that Ms.

Crabtree waived this claim against Mr. Archuleta by waiving all of her claims relating to her

injuries.  Mr. Archuleta cites Utah Code Ann. § 30-2-11 in support of this proposition, which

reads in relevant part as follows:

> (4) A claim for the spouse's loss of consortium shall be:
>
> (a) made at the time the claim of the injured person is made and joinder of actions shall
> be compulsory; and
> (b) subject to the same defenses, limitations, immunities, and provisions applicable to the
> claims of the injured person.
>
> (5) The spouse's action for loss of consortium:
>
> (a) shall be derivative from the cause of action existing in behalf of the injured person;
> and
> (b) may not exist in cases where the injured person would not have a cause of action.

Nothing in § 30-2-11 directly addresses the question of the effect of a non-inured spouse's

release of his or her claims on the non-injured spouse's loss of consortium claim.

Nonetheless, Mr. Archuleta interprets several parts of this statute to mean that by

releasing her personal injury claims, Ms. Crabtree also extinguished Mr. Crabtree's loss of

consortium claims.  First, Mr. Archuleta points to 4(a)'s requirement that an action for loss of

consortium must be joined with the claim for injury to assert that the claims are interdependent

and not separate.  Mr. Archuleta  views 5(a)'s instruction that a loss of consortium "shall be

derivative" of the injury claim as further support for the concept that a loss of consortium claim

5

cannot survive the release of a spouse's injury claims.  Finally, Mr. Archuleta argues that Ms. Crabtree does not have a cause of action any more because she waived her claims, meaning that under 5(b), Mr. Crabtree does not have a claim either.

The Plaintiffs dispute Mr. Archuleta's reading of § 30-2-11.  They argue that the loss of consortium claim belongs to the non-injured spouse, and that though this claim is derived from the claims of the injured spouse, it is nonetheless a separate claim.  Moreover, they assert that 4(a)'s requirement that the spouses' actions be joined does not apply when the injured spouse decides not to bring an action.  Finally, the Plaintiffs contend that under 5(b), the loss of consortium action may exist whenever the injured spouse "would" have a cause of action.  Here, they maintain, Ms. Crabtree "would" have a cause of action if she had not allegedly released it, because she was injured by Mr. Archuleta.  Accordingly, Plaintiffs conclude, the injured spouse does not have any legal ability to waive the non-injured spouse's claim, and Ms. Crabtree did not waive Mr. Crabtree's claim here.

As explained further below, the court agrees with the Plaintiffs on this question.  The court is unaware of any Utah court that has addressed this question of statutory construction, leaving the court to determine how it believes the Utah Supreme Court would resolve it.  See Hartford Acc. & Indem. Co. v. U.S. Fidelity and Guar. Co., 962 F.2d 1484, 1487 (10th Cir. 1992).  The court looks to Utah law and relevant law from other jurisdictions for guidance.

As the court pointed out in an earlier order in this case, there is a split among the other jurisdictions that have addressed this issue.  (See Dkt. No. 67.)  The American Law Reports describes the competing positions as follows:

> Where the action for loss of consortium is seen as purely derivative of the original cause of action for the injury, it has been held that once the original cause of action has been released, the action for loss of consortium is also barred.  However, the more prevalent view seems to be that the loss of consortium suit is not barred as it is a separate and

independent cause of action which is the property of the spouse and cannot be controlled
by the injured person.

29 A.L.R. 4th 1200 (emphasis added).  Upon reviewing the authority cited in this treatise, the

court agrees that the key issue in resolving this dispute is whether Utah law treats a loss of

consortium claim as a separate claim owned by the non-injured spouse or one that is so tied to the

underlying claim that it can be said that the injured spouse controls it.  The court believes that

Utah cases are more consistent with the former view.

It is first worth noting that § 30-2-11 stating that loss of consortium claims are

"derivative" of the injured spouse's claim does not necessarily mean that they are "purely

derivative" to the point that they are controlled by the injured spouse.  Many of the jurisdictions

following the majority view of no waiver are states where case law define loss of consortium

claims as "derivative."  See, e.g., Huffer v. Kozitza, 375 N.W.2d 480, 482 (Minn. 1985 ("The loss

of consortium claim is said to be a derivative claim. . . . Both claims use the same liability but

they are separate claims with separate injuries.") and Brown v. Metzger, 455 N.E.2d 834, 837-38

(Ill. App. Ct. 1983) ("Though derivative, the loss of consortium claim is still a separate cause of

action.").

On a review of Utah cases, it appears that Utah treats a loss of consortium claim as a

separate claim belonging to the non-injured spouse.  For example, in Progressive Cas. Ins. Co. v.

Ewart, 167 P.3d 1011 (Utah 2007), the Utah Supreme Court addressed the question of whether an

insurer was required by Utah insurance statute to provide separate coverage for a non-inured

spouse's loss of consortium claim.  Ultimately, the court rejected the plaintiff's contention that a

loss of consortium claim was one for "bodily injury," so that such a claim did not require a

separate statutory limit.  See id. at 1014-15.  But nowhere in Ewart did the court rule that the loss

of consortium claim was not its own separate claim, failing to reject Justice Durham's definition

of a loss of consortium claim as "a separate and distinct injury" in her dissenting opinion.  Id. at 1015 (Justice Durham dissenting).   Further, if loss of consortium was not a separate claim under Utah law, there would have been no need for the Ewart court to determine whether that claim was one for "bodily injury."   The clear implication from Ewart, then, is that under Utah law, a loss of consortium claim is separate one that belongs to the non-injured spouse.

The Utah Court of Appeals' decision in Fox v. Brigham Young Univ., 176 P.3d 446 (Utah Ct. App. 2007) does not change this conclusion.  In Fox, the court upheld the trial court's summary judgment against a plaintiff on his loss of consortium claim because the court had found that the plaintiff's wife did not have enough evidence on the record to prove her negligent injury claim.  See id. at 452.  The court reasoned that plaintiff's "claim for loss of consortium failed because it was dependent on the success of [the injured spouse's] negligence claim. . . . [Plaintiff's] loss of consortium claim ceased to exist when [his spouse's] negligence claim failed." Id.  The decision in Fox does not dispel the notion that the loss of consortium is a separate claim. Instead, it acknowledges that the a loss of consortium claim cannot succeed against a defendants if the injury claim fails against the same defendant.

Because Utah appears to be among the jurisdictions which see loss of consortium as its own claim, it comfortably follows that it would also adopt the majority rule that a spouse's release of his or her injury claims does not release the loss of consortium claim.  The court agrees, in other words, with the Plaintiffs' reading of § 30-2-11 as set out above.  This conclusion is bolstered by other courts that have adopted reasoning similar to Plaintiffs'.  See, e.g.,  Huffer, 375 N.W.2d at 481-482 (ruling, among other things, that requirement that loss of consortium claim be brought at the time of trial did not apply to bar the non-injured spouses claim when the injured spouse had settled).  Accordingly, assuming Ms. Crabtree's release is a binding contract, she did

not release Mr. Crabtree's claim.

## II.    The Validity of Ms. Crabtree's Release

Although the previous section is premised on the assumption that Ms. Crabtree's release was valid, the court finds that this is not a settled question at this point.  That is because the court agrees with Ms. Crabtree that there is a triable issue of fact on the question of whether her agreement to release her claims was obtained by fraud.

Simply put, if Ms. Crabtree can prove American Family made a false promise to her to induce her to sign the release, her release would be voidable.  See, e.g., Peterson v. Coca-Cola USA 48 P.3d 941, 946.  Mr. Harris submitted an affidavit in which he asserts that an American Family representative "assured me that Andy Crabtree's loss of consortium claim would be honored at a later date."  (Harris Aff. ¶ 12, attached as Ex. A to Memo in Opp'n to SJ as to Ms. Crabtree.)  But American Family has not paid Mr. Crabtree's loss of consortium claim, meaning that if what Mr. Harris states is true, American Family made a false promise.

Mr. Archuleta has moved to strike Mr. Harris' statement as barred by Utah's parol evidence rule, especially given the release's integration clause. (See Dkt. No. 60.) But this rule excludes only extrinsic evidence purporting to vary the contract: it does not work to exclude evidence relevant to fraudulent inducement.  See Tangren Family Trust v. Tangren, 182 P.3d 326, 330-31 (Utah 2008) ("[E]xtrinsic evidence is appropriately considered, even in the face of a clear integration clause . . . where a contract is voidable for fraud. . .") (emphasis added).  Accordingly, the court denies Mr. Archuleta's motion and will consider Mr. Harris' affidavit.  Based on that affidavit, summary judgment is inappropriate.

## ORDER

For the foregoing reasons, Mr. Archuleta's motions for summary judgment (Dkt Nos. 50

& 52) are DENIED.  Mr. Archuleta's motion to strike Mr. Harris' affidavit (Dkt. No. 60) is

DENIED as specified and as moot.

IT IS SO ORDERED this 11th day of September, 2008.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
Chief District Judge

10